**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**VINSTICKERS, LLC, and
ESP DATA SOLUTIONS, INC.,**

    **Plaintiffs/Counterclaim Defendants,**

          **v.**                                          **Case No.  07-2031-JWL**

**MILLERNET CORP., et al.,**

    **Defendants/Counterclaim Plaintiffs/
Third-Party Plaintiffs,**

          **v.**

**ERIC HINKLE and KEN KARG,**

    **Third-Party Defendants.**

**MEMORANDUM AND ORDER**

This lawsuit arises from a failed business relationship between plaintiffs VinStickers, LLC and ESP Data Solutions, Inc. and defendants Millernet Corp., Millernet LLC, VIN Solutions of Ohio, Inc. and Brian Miller (collectively, "Miller"). Plaintiffs VinStickers and ESP filed this lawsuit asserting claims based on defendant Miller's alleged failure to make payments required under the terms of the parties' agreement as well as Miller's allegedly unauthorized use of the marketing words "VinSolutions" and "VinStickers." Miller, in turn, asserts counterclaims and cross claims against third-party defendants Eric Hinkle and Ken Hart, who allegedly are affiliated with plaintiffs VinStickers and ESP. The thrust of those

counterclaims is that VinStickers and ESP overcharged Miller under the terms of the parties' agreement, impermissibly used words similar to Miller's "VIN Solutions" trademark and trade name, and interfered with Miller's relationships with its clients. This matter comes before the court on the motion of VinStickers and ESP (doc. #48) to dismiss Miller's fraud counterclaim. For the reasons explained below, this motion is granted.

## BACKGROUND

According to the allegations in Miller's counterclaim,[1] counterclaim plaintiff VIN Solutions of Ohio, Inc. and counterclaim defendant ESP entered into an agreement on or about December of 2004. ESP failed to invoice VIN Solutions properly according to the terms of the parties' agreement, resulting in VIN Solutions being overcharged. Miller further alleges that counterclaim defendant VinStickers engaged in the unauthorized use of the trademark and trade name VIN Solutions on its website and through other forms of public communication. Based on these general allegations, Miller asserts counterclaims against ESP and VIN Solutions as follows: (Count I) breach of contract by overcharging Miller nearly $60,000 in monthly fees; (II) unjust enrichment by overcharging Miller and also by VinStickers' unauthorized use of Miller's VIN Solutions trademark and trade name; (III) unfair competition based on VinStickers' use of words, terms, names, symbols, and devices

---

[1] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in Miller's counterclaim.

that are substantially similar if not identical to Miller's VIN Solutions trademark; (IV) tortious interference with Miller's contractual relationships with its clients; (V) injury to Miller's business reputation; and (VI) fraud. Counterclaim defendants ESP and VinStickers now move to dismiss the fraud counterclaim asserted against them.

Miller's fraud counterclaim alleges that ESP and VinStickers sent invoices to Miller containing monthly fees that were not part of the agreement. VinStickers charged Miller two or three times the agreed-upon fee for a single transaction. The result was that Miller paid nearly $60,000 in monthly fees to ESP and VinStickers for which Miller should not have been billed under the parties' agreement.

Miller's fraud counterclaim further alleges that on June 20, 2006, Mr. Miller attended a meeting at VinStickers' headquarters and met with a VinStickers' representative about some of these billing issues. While Mr. Miller was there, Mr. Hinkle told Mr. Miller that if he wanted to renew his agreement with VinStickers, he must comply with three demands: (1) pay all outstanding invoices regardless of any overcharges, (2) retract any filing for the trademark VIN Solutions, and (3) satisfy his agreement with Mr. Karg. Mr. Karg then told Mr. Miller "remember several years ago when I said if I could show you how to make a dollar you would pay me a dime . . . I want my ten percent (10%) of the revenue from VIN Solutions for the last year and from this point forward. Then Mr. Hinkle told Mr. Miller that is between you and Mr. Karg, when he is satisfied, I will be too, and we can continue our relationship." Miller's Amended Answer and Counterclaim (doc. #43), ¶ 64, at 19-20.

3

VinStickers locked Miller out of the VinManager system on or about August 29, 2006, but at that time Miller's clients were still granted access to the system. VinStickers informed Miller that VinStickers would terminate Miller's clients' access to VinManager and all other services effective November 30, 2006. Then, before that date arrived, VinStickers locked Miller's clients out of VinManager and all other services. When some of those clients called VinStickers' support line, they were told that Miller's access to VinManager was terminated because Miller could not pay its bills.

Miller's counterclaim alleges that Miller "justifiably relied upon the aforementioned invoices, actions and statements" to its detriment. *Id.* ¶ 71, at 21. Miller sustained damages as a result of these untrue statements "by paying the aforementioned invoices that overcharged them," "in the form of not being able to renew [Miller's] agreement with Counterclaim Defendants," and by losing clients as a result of these statements. *Id.* ¶ 72, at 21. On this claim, Miller seeks the amount of the overcharge, an amount to compensate Miller for its loss of clients, and punitive damages.

## MOTION TO DISMISS STANDARD

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief

requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S. Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

Under Kansas law,[2] the elements of a cause of action for fraud include an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party relies and acts to his or her detriment. *Bomhoff v. Nelnet Loan Servs., Inc.*, 279 Kan. 415, 422, 109 P.3d 1241, 1246 (2005); *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191, 1195 (2004). Here, Miller's fraud counterclaim is based on essentially four allegedly "untrue statements" made by ESP, VinStickers, and/or its representatives: (1) overcharges on VinStickers' invoices to Miller;

---

[2] The parties seem to agree that Miller's fraud counterclaim is governed by Kansas law.

5

(2) the conditions Mr. Hinkle recited for renewing VinStickers' license agreement; (3) VinStickers representation that it would terminate Miller's clients' access to VinManager and all other services effective November 30, 2006, when in fact it locked Miller's clients out of the system before that date; and (4) the fact that when Miller's clients called VinStickers' support line they were told that Miller's access to the software was terminated because Miller could not pay its bills.

Turning first to the alleged overcharges on VinStickers' invoices, VinStickers and ESP argue that this allegation does not state a claim for fraud because it is merely an improper attempt to turn a breach of contract claim into a tort. The court agrees. "To maintain a fraud claim under Kansas law, the basis of the claim must be different from the conduct upon which a breach of contract claim is based." *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 675-76 (10th Cir. 2007) (citing and applying Kansas law). Additionally, the fraud must have resulted in damages greater than those caused by the breach of contract alone. *Id.* (same). Here, the basis for Miller's fraud claim is indistinguishable from a claim that VinStickers breached the parties' contract by charging Miller more than was called for under the terms of the agreement. Furthermore, the only pertinent allegation of detrimental reliance is that Miller was damaged by virtue of having paid the overcharges. This amounts to nothing more than damages caused by the breach of contract alone. As such, VinStickers' allegedly "untrue statement" in the form of invoice overcharges does not support an actionable fraud claim under Kansas law.

The second aspect of Miller's fraud claim is its allegation that when Mr. Miller met with VinStickers, Mr. Hinkle told him that he must satisfy the three conditions if he wanted to renew his agreement with VinStickers: (1) pay all outstanding invoices regardless of overcharges, (2) retract any filing for the trademark VIN Solutions, and (3) satisfy an agreement with Mr. Karg. This aspect of Miller's fraud claim fails to state a claim upon which relief can be granted for at least two reasons. First, to state an actionable fraud claim, the alleged misrepresentations must relate to some present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 659, 360 P.2d 23, 26 (Kan. 1961). When the alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is a fraudulent misrepresentation concerning a present, existing intention to perform when no such intention existed. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816, 824 (1979). Miller's fraud counterclaim does not allege any facts indicating that Mr. Hinkle did not intend to renew the agreement with VIN Solutions if Mr. Miller were to satisfy the three conditions. Consequently, Miller has failed to plead a present, existing intent to perform when no such intention existed. Second, the counterclaim does not allege that Miller acted to its detriment in reliance on this statement. To be sure, it alleges that Miller sustained damages by not being able to renew the agreement and it contains a conclusory allegation that Miller justifiably relied on this representation to its detriment. But a formulaic recitation of the elements will not suffice. The counterclaim contains no factual allegations to suggest that Miller acted in reliance on

the truth of this representation by, for example, fulfilling these three conditions in anticipation of Mr. Hinkle renewing the contract.

The third aspect of Miller's fraud counterclaim is based on VinStickers' representation that it would terminate Miller's clients' access to VinManager and all other services effective November 30, 2006, when in fact it locked Miller's clients out before that date. Again, aside from conclusory allegations that merely recite the elements of fraud, the counterclaim alleges no facts from which it could be inferred that when VinStickers made this representation it had a present intent not to wait that long. The counterclaim also does not allege any facts to explain how Miller relied or acted upon the alleged misrepresentation that the termination would occur effective November 30, 2006.

The fourth and final aspect of Miller's fraud counterclaim is based on the allegation that when Miller's clients called VinStickers' support line, they were told that Miller's access to the software was terminated because Miller could not pay its bills. The facts alleged in the counterclaim do not give rise to any plausible inference that Miller even heard these statements, much less relied on them or acted to its detriment on them.

In sum, the factual allegations set forth in the complaint do not raise the right to relief above the speculative level with respect to various elements of this claim. Accordingly, the court will grant the motion to dismiss Miller's fraud counterclaim in its entirety because it fails to state a claim to relief that is plausible on its face. The Miller defendants have requested leave to amend their fraud counterclaim if the court were to find that the counterclaim fails to state a claim upon which relief can be granted. Significantly, however,

8

the Miller defendants do not explain how they believe they could improve upon the factual allegations supporting this claim and, frankly, the current factual allegations are so far afield from the nature of an actionable fraud claim that it is not readily apparent to the court how this claim could be successfully recrafted. The court will therefore deny the Miller defendants' request at this point in time. But, they are free to renew this request by filing a motion for leave to amend in accordance with this court's local rules. *See* D. Kan. Rule 15.1(proposed pleading shall be attached to motion to amend).

**IT IS THEREFORE ORDERED BY THE COURT** that VinStickers' motion to dismiss (doc. #48) Millernet's fraud claim is granted.

**IT IS SO ORDERED** this 8th day of February, 2008.

                                                  s/ John W. Lungstrum
                                                  John W. Lungstrum
                                                  United States District Judge